is the court. John Pelletieri from the Department of Justice on behalf of the United States. I'd like to request three minutes of rebuttal if I may, your honor. You may, but the clock will keep running, so if you want that, you'll just need to sit down at the appropriate time. Thank you, your honor. In order to obtain a stay of his execution, Mr. Lee had to meet the requirements for a stay. It was his burden. He had to show, among other things, that there was a likelihood of success on the merits. The district court, in turn, had to find that Lee satisfied those requirements. Neither occurred here. Mr. Lee didn't even attempt to meet the requirements for a stay, including likelihood of success in the merits, and the district court didn't make a finding that he satisfied those requirements. For that reason and for those reasons, the district court's stay order must be vacated. Even if the court were inclined to look and meet those standards, he can't. He can't show a likelihood of success in the merits, nor can he show that the balance of equities weigh in his favor because of his undue, unnecessary delay in this case. In order to show a likelihood of success in the merits, Mr. Lee had to make a substantial showing of strong likelihood that he would overcome three legal hurdles that would entitle him to overturn his death sentence. He had to show, because he was seeking to overturn his death sentence through a Rule 60B motion, he had to show, and he was seeking to reopen his collateral proceedings under Rule 60B, he had to show that there were extraordinary circumstances that would warrant reopening the judgment. That's a requirement for relief under 60B. Assuming he could jump through that loop, then he would have to show, and as he characterizes it, if he were able to jump through that hoop, what he would be in is in a similar circumstance as he was when he first filed his Rule 59E motion. If he were then in those circumstances, he would have to show that he's actually entitled to re-hearing under Rule 59E. But Rule 59E cannot be used for presenting new evidence that was available at the time the district court entered judgment, and here Mr. Lee has admitted that that's exactly what he'd attempt to do in his Rule 59E motion. In fact, Judge Isley made clear that the motion was without merit on that basis, and this court has recognized that when it affirmed, I believe it was on appeal of the 2255 motion. Then, if he were to get through those two loops, he'd have to show a strong likelihood that there's a likelihood of success on the merits of his underlying ineffective assistance claim. This is the ineffective assistance claim that he seeks to raise through the Rule 59E motion, and he can't show that either. There's been different characterizations, different framings of this argument, but no matter how it's framed, Mr. Lee has not shown that he can meet the two-pronged standard of Strickland. At the trial, his lawyers objected to the introduction of evidence about psychopathy. They objected to it on cross-examination of the defense expert, Dr. Cunningham, and they objected to any testimony about psychopathy or dangerousness in general through the government's extrovert, Dr. Ryan. Now, the district court allowed cross-examination of Dr. Cunningham about psychopathy, but eventually he granted the defense request to limit information or testimony or reference to psychopathy. So at that point in time, there was no expert evidence, an opinion by an expert saying that a diagnosis as a psychopath is linked to dangerousness in prison. But the government did argue that his diagnosis indicated a higher likelihood of dangerousness in the future, correct? Yes, Your Honor. So the government wasn't distinguishing between prison and community? Well, what Mr. Lee's claim is, is that linking dangerousness in the community, or excuse me, that psychopathy, linking psychopathy, a diagnosis as a psychopath, there's no scientifically valid connection between that and dangerousness in prison. In effect, what he's saying is that an expert opinion of that sort would be inadmissible under Rule 702 in Daubert, because it would be unreliable. Daubert doesn't apply in a capital sentencing proceeding, and the government is entitled to present evidence that's probative of dangerousness. And even in this case, we did not introduce evidence that he says would be scientifically invalid, because no one testified that there was a link. And this Court has held that the government is entitled to present testimony, excuse me, evidence about dangerousness in the community when proving the aggravating factor of future dangerousness. When you say nobody testified that there was a link, which link are you referring to? Between a diagnosis of psychopath, and no expert testified at trial that that meant that Mr. Lee would be dangerous in prison. And, in fact, all of the evidence was to the contrary. All the testimony was to the contrary. Dr. Cunningham specifically testified that there was not enough support in the literature to make that link. But the argument, then, is that future dangerousness to the jury, if you argue future dangerousness and the choices between a sentence of death and a sentence of life without parole, and a sentence of prison, then that is in prison, right? For Your Honor, the government is not, the jury is not barred, let me put it this way, the jury does not have to be limited to, quote, scientifically valid evidence that certain evidence links dangerousness, future dangerousness. That's the Supreme Court's holding in Barefoot V. Estelle. The Supreme Court said that reliability and things of that sort come out through the adversary process, and the jury is entitled to hear all the evidence, the parties are allowed to present opposing evidence, and then the district court gives it whatever weight it wants. And that's what happened here. But there is some gatekeeping from the district court. You're not suggesting that the district court would be without the authority to limit testimony. The only limit is the weighing test that's under the Federal Death Penalty Act, Your Honor. That's the limit that the court can provide in a capital sentencing hearing. Well, in fact, the court did impose other limits here, right? Because, first of all, the testimony on cross-examination about the hair test being reliable as a test of psychopathy was allowed. And then the judge decides that he's let the cross-examination go too far, does not allow any further evidence in about dangerousness in prison, you know, but it's all out there right now. At that point, he's already performed some kind of a gatekeeping function. The question I've got is, if you look at all that and you look at the 2001 opinion, where basically the panel says that evidence necessarily was admissible, how do you get beyond, I mean, doesn't that resolve the question at that point? I mean, I'm sure you agree that it does, but... Yes, Your Honor. This court found it probative of future dangerousness, and we agree. The jury was entitled to consider that for future dangerousness. The fact that the district court ultimately accepted the defense argument here, in our view, and I think what this court's decision establishes is that that was erroneous. The district court, in fact, should have allowed more evidence. There was no basis to cut it off there under the Federal Death Penalty Act, which has a very low threshold for the admission of testimony and evidence. And so the jury here was entitled to hear the evidence about psychopathy. Mr. Lee was able to present his own evidence about psychopathy, which is what his expert, Dr. Cunningham, in fact, did. And Dr. Cunningham provided the testimony that he believes is accurate. And the jury had all that information, and it could come to the conclusion that it wanted to. And in fact, the jury, as you mentioned, Judge Erickson, didn't hear additional evidence because the district court cut off, in fact, the government did intend to introduce evidence from Dr. Ryan, opinion evidence about psychopathy, but it didn't because of the district court's ruling. And what Mr. Lee's claim is right now is that basically his lawyer should have taken a different tack at sentencing, a different strategy to keep out the evidence. But there's no basis to conclude that a different strategy would have changed any of the evidence that the jury heard. What do you want to say about delay? I notice you put it at the end of your briefs, but often it's the first thing we look at when someone files a motion for stay one business day before an execution, when the condition that prompts the motion had existed for five months. I know you make this argument, but does the fact that there's been a stay now entered by the district court into this appeal? No, Your Honor, because it has to be evaluated at the time the district court made the decision. That's the point in time when the undue delay is relevant, because the district court at that point has to evaluate all the space factors. I see that, and I'm just wondering if we vacated the stay because of delay, and then they filed the same motion and said there's no execution date pending, would that one be out for delay too, or would we end up on the alternative issues at that point? I think it would be less of a factor. If they were to refile a stay application, if this court would have vacated solely on the basis of stay and they were to refile a stay application, obviously that equitable factor would weigh less against, because at this point there is no execution, I believe. Well, I know that there's no execution scheduled. So the stay application would have to be evaluated, as I understand it, differently in that context. Maybe, maybe. I mean, the only reason there's not a date is because their stay is entered by another court. Correct, Your Honor. I guess it's context dependent is what my answer is, because there very well could be a decision from the D.C. then the Bureau of Prisons could set a new date for Mr. Lee's execution, and then that would have to be evaluated altogether. I mean, we'd urge you to find also that there's no likelihood of success in the merits, because both of these factors independently required the district court to deny Mr. Lee's stay application. Do you want to say anything else about extraordinary circumstance? Yes, Your Honor. I mean, that's the third hurdle you'd have to overcome. Well, it's the first. And generally a change in decisional law is not a basis for finding extraordinary circumstances. It's very rare that a change in decisional law can establish such extraordinary circumstances. And I think that the Supreme Court's decision in Buck really shows how quite extraordinary it has to be. In that case, the defense lawyer himself introduced testimony that the defendant would likely be more dangerous because of his race. And the Supreme Court made clear that that really casts a shadow over the whole justice system. And in that case, there were extraordinary circumstances. This court has distinguished Buck in two highly analogous cases, in Williams and Davis. And those are two cases in which the defendant sought to reopen collateral proceedings through 60B and sought a stay application for his execution. And the court found that the extraordinary circumstances were not present there. And the change in law in Trevino and Martinez, which established a basis for overcoming procedural default of ineffective assistance claims, didn't provide, in the context of those cases, exceptional circumstances. And here, there's no extraordinary circumstances either because, number one, Mr. Lee can't overcome the Rule 59E standard. This court has specifically concluded that the jury should have and was entitled to hear the psychopathy evidence. And a decision in Bannister wouldn't be that type of really strong, substantive decision that certainly would not apply retroactively on collateral review. And that could be a factor in determining whether it provides extraordinary circumstances. And so for all those reasons, Mr. Lee also cannot overcome the Rule 60B requirement of extraordinary circumstances. I see that I'm eating into my rebuttal. Thank you. Mr. Kouros, we'll hear from you. May it please the court. George Kouros on behalf of Mr. Daniel Lee, the appellee in this case. With me at council table is Mr. Morris Moon. One point just to pick up where we left off with the government's argument is that the execution date in this case has come and gone. No new execution date has been set. The underlying order is moot because there is no execution to stay. And the difference between this case and the court case in D.C., which is the preliminary injunction, is that there will always be a case in controversy in that case, because that case is based on the legality of the BOP's execution protocol. Whether or not an execution date is set in that case, there will always be a case in controversy. Here, we only get a stay if there is an execution date to stay, which there is not. Well, but doesn't the order say the government may not carry out the sentence until further order of the court? So it stayed for all time. Your Honor, I would respectfully disagree, because I think read in context, it's not an indefinite stay. It's a stay in order to allow the banister decision to be issued so that the court can decide whether or not anything the court says in banister results in a change in law that affects the outcome of the 60B. Now, when we filed the 60B motion, at any time in which we filed the 60B motion, we would have moved to hold it in abeyance, because obviously it can't be decided until banister tells us whether or not Gonzales applies to the motion. Well, banister hasn't been decided yet, so does that mean it's still alive then? The 60B motion? No, the order is not moot, because you just said the purpose of the order implicitly, I guess, is to stay the execution until banister is decided. So the stay is still in effect. To stay the execution in order to allow it to decide the 60B once banister is decided. But there is no execution to stay, Your Honor, is the point. The court couldn't reach the merits of the 60B motion just because banister hasn't been decided yet. Now, there happened to be an execution date set, and that's why it had to grant the stay, in case Mr. Lee were to be executed before banister decided, therefore mooting the 60B. That's not the world we're in now. There is no execution date. So if it is moot, what's your request then? This court can enter a summary order vacating the district court order granting a stay of execution as moot because there is no execution date to stay. And the 60B remains in the district court because the court held that in advance, which it's properly within its discretion to do. That's the routine practice in this circuit and in the district courts. If there is a pending Supreme Court case that's dispositive, you can hold the case in advance. This court has done it with Davis cases and Johnson cases that have come up in the Supreme Court. The district courts do the same thing. So the court would just hold on to the 60B motion, hold it in advance until banister is decided, and at that point can decide. Is there anything that the Supreme Court said in banister that applies to the issue here, namely whether or not Gonzales applies to Rule 59E motions? But then if there were an execution date set before banister comes down, you'd be back in the court asking for a stay again. Well, actually, Your Honor, there would be three conditions that would have to arise before this would become ripe again. There would have to be a new execution date set. The preliminary injunction in D.C. would have to be vacated, and banister would have to be not yet decided. And none of those three conditions have arisen. And in the absence of that, this court would be issuing an advisory opinion because we're dealing with hypothetical facts that have not arisen yet. Why didn't you just go to the district court then and say, we agree to vacate the stay? Because the district court didn't have jurisdiction once the government filed a notice of appeal. It lacks jurisdiction. So you want us to vacate the stay? Yes, because it's moot, Your Honor. There is nothing to stay. There's no execution date. I mean, what are we staying, exactly? You're staying the government from carrying out the sentence. Your Honor, it's staying the execution date so that the court would have the time to decide the 60B motion once banister is decided. That's why the court entered the stay, because banister, by definition, would not be decided before Mr. Lee was scheduled to be executed. But to turn to some of the merits issues that the government brought up, first of all, I think there's a fundamental mischaracterization of the claim. This was not a Daubert issue that was raised. The claim is that trial counsel should have objected to the reliability of the PCLR because it was unscientific. There is no scientific basis for claiming that the PCLR is a valid predictor of future dangers in prison. It's just in prison, right, to make it clear that there's a distinction between its ability to predict dangerousness in the prison versus the community. And I would note that the argument that the government made to the jury, and I'm quoting now from transcript page 7381, where the government said, the evidence that will be presented in this trial is going to help you understand that Mr. Lee, this man who sits right here in this courtroom, is a violent and dangerous man. He thrives on this stuff. This is part of his profile. Even if you sent him to prison for the rest of his life, he will be a threat for a long, long time. And that's what the jury understood the government was saying, that he's going to be a future danger, even in prison. That's the context here. That's what an ordinary juror would have understood hearing this evidence. And it's what Judge Isley understood when he issued his order for a new trial. And in fact, what Judge Isley said, he contemporaneously observed that but for this evidence. It is very questionable that the jury would have sentenced Mr. Lee to death. So when you take that factor, combined with the other factor, which is if Dr. Ryan had been challenged prior to trial, that he would have withdrawn his opinion, there's no scenario where the jury would have heard anything, not word one about psychopathy or the PCLR. It just would not have been injected into this case. So what do you make then of this court's ruling on the issue of the testimony? Thank you for asking that question, Your Honor, because that ruling in 2001 wasn't about this issue, this claim. It was a purely evidentiary issue having to do with whether or not the PCLR was admissible to show future dangerousness, whether in prison or not, because nobody at that point in time had raised a challenge about the unscientific nature of using the PCLR for the purpose of demonstrating future dangerousness in prison. That challenge just hadn't been raised. So that was the context in which this court was looking at it. This court didn't have all the facts. It was just looking at a purely evidentiary issue. So your position is that the evidence that this court said was fine to introduce at the sentencing phase was just simply future dangerousness, full stop, without distinguishing between community and prison? Well, there was no distinction made by the trial lawyers about that, that it's not appropriate to introduce the PCLR for future dangerousness in prison. And the fact of the matter is, and the government knows this, because this is how this evidence has played out over the last 20 years. In fact, Mr. Lee's case is the only case where a federal defendant has been sentenced to death based on the PCLR. In the last 20 years, now 21 years since Mr. Lee's case, there is not a single federal, capital case where the PCLR or psychopathy evidence has been presented to a jury. Period. Full stop. And you're talking about that evidence across the board, and I'm trying to make sure I understand when the distinction between in prison and in community matters. And when you make that statement about him, Mr. Lee, being the only person for whom that evidence was introduced, are you just talking about it generally at all? Or are you carving out that evidence as to dangerousness in prison? Your Honor, when I say that there's no federal capital trial where the PCLR has been presented and psychopathy has not presented, I mean at all in the last 20 years for any reason. Now, the government has tried. After Mr. Lee's case, they tried to do it in the Willis Haynes case in the District of Maryland. And that was the case where Dr. Ryan first withdrew his opinion. Did Ryan testify in this trial? He did testify in this trial. And in fact, I think the government's being a little misleading about the record, because he did actually testify to his use of the PCLR and why the PCLR is a reliable instrument. He was queried about that on rebuttal. And the fact of the matter is, his opinion about the PCLR and future dangerousness, that all came out through Dr. Cunningham. The jury heard it. And that's what Judge Isley said, is that functionally the government turned Dr. Cunningham into its own best witness on future dangerousness. It had a very brief, direct argument in the penalty phase, and then did the bulk of its future dangerousness through the cross-examination, where it elicited from Dr. Cunningham all sorts of information about what the PCLR is, how it scored, what are the factors, how Mr. Lee did on that test. All of that came out through Dr. Cunningham. And the fact of the matter is, if trial counsel had challenged Dr. Ryan prior to trial, none of that would have been in front of the jury. And we would like to get to the merits of this case. That's the one thing Mr. Lee wants. And it's the reason why the district court was correct when it said that Chambers is controlling here, because Chambers operates in the context of when a capital defendant might be deprived of a process to which he's otherwise entitled. And if Bannister comes out the way that we think it will, based on the way that the argument went, it seems as if the ruling will be that Gonzalez does not apply to Rule 59 motions. We'll be back in that same position. Now, the government says that there's still going to be other hurdles that have to be overcome, and so I can address those in turn. Well, I think you should. I think our court and the district court both already said that the evidence came in too late. On the Rule 59, Your Honor? Yeah. So actually there were two different things going on in Judge Isley's Rule 59 order. One had to deal with the issue of whether or not the district court erred in not granting an evidentiary hearing. So that was one part where the district court talked about these declarations being in too late. But on the second issue, which is the C sub point of that Rule 59 order, which deals with the actual substantive IAC claim, based on Dr. Ryan's recantation, what Judge Isley said is this claim is successive. It's the same claim successor, which was the position the government, by the way, took in the lower court below. They've done it about face now and say this is a new claim for the first time on appeal, but they understood in their Rule 59 litigation that this was a claim that was raised as part of the Rule 22-5. And what Judge Isley said is I can't reach this claim because it's successive. Now he then went on to do a sort of quasi-alternative merits analysis, which obviously you can't do. Once you hold that a claim is successive, you're deprived of jurisdiction to reach the merits. Well, whether he could have done it or not, we have to look at that and see whether you have a substantial likelihood of success. So if we think what he said in the alternative is correct, that would mean you don't get through the 59E gateway. Well, I think there's a good reason, Your Honor, to find that that analysis, the merits analysis that Judge Isley did, we know, for example, that there's clear error in part of that merits analysis. And let me give you an example. What Judge Isley said was there's no way trial counsel in 1999 could have raised this issue because Dr. Ryan didn't say until the year 2000 that this was unscientifically sound. But that's not exactly what he said. His declaration was made in 2000. But he was talking about the Stitt trial, United States v. Richard Stitt, a trial that occurred in 1998. And what he said was if this same challenge had been raised at the time of that trial, 1998, a full year before Mr. Lee's trial, I would have withdrawn my opinion then. And that's just a fundamental mistake that was made because this was done on a truncated process, a truncated review. And the thing that I think is problematic here is the government knows that that was just a mistake that Judge Isley made. It's an objective mistake. And yet they keep repeating that in proceeding after proceeding after proceeding, even though they know it's not true. Of course, Dr. Ryan would have withdrawn his opinion in 1999 because he told us himself that if he'd been challenged in 1998 in a different trial, he would have done the same thing. And so that's one reason, Your Honor, why I don't think you can just defer to the merits, the alternative merits holding that Judge Isley did because it's objectively wrong on certain facts and why we have to have a more fulsome review. But I was referring to the fact that even before he got into what you just discussed, he said Lee hasn't explained why the information he now includes wasn't included in the original petition. It's just too late. Well, I think, Your Honor, that's with respect to the evidentiary hearing prong of the Rule 59, which is a separate issue, whether or not he should have granted an evidentiary hearing. And we're talking about the CESA point of the Rule 59 order, which is just the straight argument about whether or not, in light of the recantation of Dr. Ryan, the Sixth Amendment claim should be reconsidered. And he says it shouldn't be reconsidered because it's successive. And I would make one other point, Your Honor, about what could the government says we should think about what the best case scenario might be under Bannister. The best case scenario is not just that the court says Gonzalez does not apply to Rule 59s. The best case scenario, and this kind of came up during the argument at Bannister, is to talk about the contours of what's available within the scope of Rule 59. Because when the government says that there's a bright line that you cannot introduce evidence as part of a Rule 59 motion, that's not actually the law. In fact, a district court has substantial discretion about what they can consider in the context of a Rule 59 motion. And one of the factors they look at is unfair prejudice to the opposing party. So the best case scenario would be that the Supreme Court in Bannister talks a little bit about that. It talks about what exactly is within the scope of Rule 59. And the reason why that factor, unfair prejudice to the opposing party, is so important in this case is because there's no way the government can demonstrate that here. The evidence that we're talking about is all from litigation that the government was a party to. United States v. Haynes, United States v. Stitt. They had all this information before we did. They can't claim they're surprised that Dr. Stitt recanted his opinion. They can't claim they're surprised that there were a number of psychologists who came forward and who said, it is unscientifically sound and unprofessional and unethical for an expert to say that, based on a PCLR score, I can opine someone will be a future danger in prison. So that's the best case scenario under Bannister. But we don't know that now. And we won't know that now. And that's why this court would be issuing an advisory opinion in the absence of knowing exactly what Bannister says, in the absence of knowing if there's going to be an execution date set, in the absence of even knowing whether or not the preliminary injunction will stay or be vacated. And for all those reasons, I think the most prudential course here, there's also a prudential mootness doctrine that this court can follow, which is, in light of all its uncertainties, there's no reason to wade into this now. I mean, in some ways, this case is either moot or it's unripe. What about your delay? The district court says, delay is not a reason to deny this motion because of what the judge said in Indiana. Of course, the judge in Indiana was reversed on that. And then the judge said, delay of five months is not unreasonable given the overall timeline of the case and related cases. What does that mean? I'll try to do this in 16 seconds, Your Honor. I'll give you more time if you need it. I appreciate that. Thank you, Your Honor. Not a lot. First of all, the district court did make a factual finding that in the context of the entire litigation, the five months was not an unreasonable delay. That's a factual finding by the court. It didn't simply defer to the district court immediately. What fact was found? That in the context of the entire litigation, this five months is not an unreasonable delay. What's the fact? That is the fact. Reasonableness? Well, delay is a factual finding, Your Honor. Well, there was five months of delay. That's undisputed. The question is whether it was unreasonable to the point where it makes you ineligible for a stay. What case says that's a factual finding? I will provide it in a 28-J letter because I was just looking at a case like that from this court that talked about any time we talked about delay. Why isn't it clearly erroneous even if it's a factual finding? You could have filed this, you wait until the day before. It's a common tactic and why shouldn't we discourage that by saying this is impermissible? You could have filed this any time for five months. Sure, because what distinguishes this is if you look at the underlying test, it's if you had brought the motion sooner, would that have allowed the district court to resolve the merits of the issue in time without having to resort to a stay? But because the 60B is predicated on Bannister, which is not yet decided, the court would have had to hold it in abeyance regardless. It was not the timing of our 60B motion or the stay motion that prevented the court from resolving our 60B. It's an external factor. It's when the court will resolve Bannister. And so the court was properly held the 60B motion in abeyance. So it did not preclude the court from resolving the 60B motion. It was its decision to hold it in abeyance as it properly could. It's the Bannister decision that would preclude the court in any event from resolving the 60B motion. All right. Thank you for your argument. Mr. Pelletier? There are a few points that I'd like to make about the ineffective assistance claim here. And I think that my friend's analysis kind of avoids the actual Strickland standard, which is you have to show deficient performance and then prejudice. And the question here is, what should his lawyers have done differently at the time of trial? And why was what they did do somehow beyond professional reasonableness? Here, the defense lawyers tried to keep out psychopathy by limiting their case to mitigation. And eventually they succeeded in the district court. And now Mr. Lee says, well, they should have done something different. But he doesn't really show exactly what they should have done that was different or why that would have changed the outcome of the trial. Mr. Lee says, well, they should have said that an opinion linking psychopathy and dangerousness in prison was not scientifically valid. But they don't say why that kind of argument would have succeeded in limiting what the jury heard, because the jury didn't hear that opinion at all. And, in fact, what's noteworthy is that in a Barnett case, which has been cited in this case in the past, it was in Mr. Lee's Rule 59e motion, a similar actual scientific validity argument about the psychopathy test was raised, and it wasn't successful. It came in. There was actual opinion testimony by a government expert linking psychopathy and dangerousness in prison. Now what happened there is that the district court did not allow the defendant to provide testimony for Dr. Cunningham rebutting that and saying, well, no, psychopathy is not relevant to dangerousness in prison. And that's why the Fourth Circuit reversed in that case. But in here, Dr. Cunningham did provide that testimony, so all the relevant testimony was before the jury. I see my time's up. If the court has any additional questions, I'd be happy to address any other issues. Well, I'd appreciate if you addressed the mootness point, because counsel says they agree this stay should be vacated. Well, we agree that that would be the remedy if it is moot. Would that be sufficient for the government to vacate this stay? Well, we can't tell you. I'm reluctant to say you should vacate it as moot when that doesn't seem to be the correct legal analysis. What about vacating it on the concession of Lee? On the concession that if he wants to vacate the stay, I think that we would be amenable to that. I think that's what he's saying. You're right, he's claiming it's because it's moot. He doesn't want to say it's because it was meritless. I'm reluctant to say that. The bottom line is he's saying we're willing to vacate the stay, as I heard it. It would depend on what the stipulation would look like. It's hard for me to speculate, but I think we might be amenable to that, Your Honor. Well, maybe the two of you could work it out in the hallway afterwards. Save us a lot of time, if that's all it takes. I'm reluctant because some of the statements suggested that there might be some leeway if there were no stay, and then the stay in D.C. were to be lifted, and then another date were to be set, but Battenster were not to be decided. I think there was some suggestion that there would be a basis for staying still at that point. Well, I think they're saying they would go back to the district court and ask for a stay, but you could oppose that. I don't think the vacature of this would say it springs back into effect automatically. Well, because it's not moot, absent them actually going to the district court and getting it removed, this court would have to decide because legally it's not moot. And if the court were to do that, we'd urge you to find that there's no likelihood of success in the merits, which would prevent a future... Well, he says he can't go to the district court because it doesn't have jurisdiction. But the parties presumably could somehow stipulate with the Court of Appeals. Yeah, that would be something that we would have to explore, Your Honor, and I'm not sure about the contours of what would take place if we were to explore that. Well, I'm just asking for myself. Unless the court has any additional questions, we'd ask that you vacate the stay, Your Honor. Okay, very well. Thank you for your argument. The appeal is submitted and the court will file an opinion in due course.